**FILED**
September 30, 2020
Jeanne A. Naughton, CLERK
United States Bankruptcy Court
Newark, NJ
By: *Juan Filgueiras*, Courtroom Deputy

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| In re:<br>CHRISTINE R. COPPOLA,<br><br>                                    Debtor. | Case No.: 17-14944 VFP<br><br>Chapter 13 |
| CHRISTINE R. COPPOLA,<br>                                    Plaintiff,<br>v.<br>WELLS FARGO BANK, N.A.,<br>                                    Defendant. | Adv. Pro. No.: 17-1621 VFP |

## MEMORANDUM OPINION

**APPEARANCES**

LAW OFFICES OF ANDY WINCHELL, PC
Andy Winchell, Esq
100 Connell Drive, Ste. 2300
Berkeley Heights, NJ  07922
Attorney for Debtor/Plaintiff, Christine R. Coppola


REED SMITH LLP
Diane A. Bettino, Esq.
Ethan R. Buttner, Esq.
136 Main Street, Ste. 250
Princeton Forrestal Village
Princeton, NJ  08540
Attorneys for Creditor/Defendant, Wells Fargo Bank, N.A.

**VINCENT F. PAPALIA, Bankruptcy Judge**

    **I.    INTRODUCTION**

The parties to this adversary proceeding, Christine R. Coppola ("Plaintiff" or "Debtor") and Wells Fargo Bank, N.A. ("Wells Fargo" or "Bank"), reached an agreement to settle Plaintiff's claims against Wells Fargo (the "Settlement"). While documenting the Settlement, the parties advised the Court that they were unable to agree on a single term that did not materially impact the substantive terms of the underlying Settlement. That term is whether Wells Fargo is required to report the amount paid pursuant to the Settlement to the Internal Revenue Service (the "IRS") and obtain Forms W-9 from Plaintiff (and her spouse), her attorney or all three. Plaintiff argues that because the entire Settlement amount is being paid to her attorney, the Settlement payment is not income to her and therefore, the W-9 Form needs to be provided only by her attorney. Wells Fargo argues that it is not required to decide whether the Settlement payment is considered income to Debtor in determining who is required to provide a Form W-9. Instead, Wells Fargo asserts that the applicable provisions of the Internal Revenue Code and Regulations require it to obtain and provide to the IRS the W-9 Forms from Plaintiff, her husband and her attorney. For the reasons that follow, the Court agrees with Wells Fargo and determines that these individuals must provide completed and executed W-9 Forms to Wells Fargo.

    **II.    JURISDICTIONAL STATEMENT**

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Orders of Reference entered by the United States District Court on July 10, 1984 and amended on September 18, 2012. The Debtor alleged in her Complaint that this is "primarily a non-core proceeding," outside 28 U.S.C. § 157(b)(2), but consented to entry of final judgment by this Court.[1]

---

[1] Compl. ¶ 4, Dkt. No 1; proposed Am. Compl. ¶ 4, Dkt. No. 9-1.

Debtor argues that the Bank consented to jurisdiction by filing Claim No. 2-1.[2] Additionally, both the Debtor and Wells Fargo consented to the Court deciding this issue. Based on that express and implicit consent, the Court agrees that it has core jurisdiction to enter a Final Judgment in this matter. Venue is proper in this Court under 28 U.S.C. § 1408. The Court issues the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

### III. STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Debtor filed this Chapter 13 case on March 13, 2017. The case has never been presented for confirmation because this adversary proceeding, which was filed on September 19, 2017, remains pending. After the Court entered: (i) an April 4, 2018 Order that granted in part and denied in part the Bank's motion to dismiss the Complaint; and (ii) a November 1, 2018 Opinion and Order that granted in part and denied in part Debtor's motion to amend the Complaint, the Court-appointed mediator, Mark E. Hall, Esq., reported on March 27, 2019 that the parties had settled the adversary proceeding.[3]

An unsigned *Settlement Agreement and Release* (the "Settlement Agreement") was submitted to the Court for the first time on June 4, 2020 in connection with the resolution of this sole remaining issue.[4] The Settlement Agreement indicates that the parties settled the matter for $20,000 payable entirely to Debtor's Counsel (the "Settlement Payment"), dismissal of the Complaint and release of any claims that Debtor and her non-debtor spouse, Robert John Coppola

---

[2] Compl. ¶ 6, Dkt. No. 1.
[3] Apr. 4, 2018 Order, Dkt. No. 7; Nov. 1, 2018 Op., Dkt. No. 13; Nov. 1, 2018 Order, Dkt. No. 14; Mar. 27, 2019 Mediation Report, Dkt. No. 20.
[4] June 4, 2020 Certification of Ethan R. Buttner, Esq., *Settlement Agreement and Release*, Ex. A, Dkt. No. 38, ("Buttner Certif.").

(the "Releasors"), have against the Bank.[5] The provision of the draft Settlement Agreement at issue requires either: (a) only Debtor's Counsel, or (b) Plaintiff, her spouse and Debtor's Counsel to provide W-9 Forms.[6] Specifically, section 1 provides in relevant part a follows:

1. **Consideration.**

    a. Wells Fargo's Obligations: Within three (3) business days from the date of approval of this Agreement by the Court, Releasors shall execute two original counterparts of this Agreement and deliver one original counterpart to counsel for Wells Fargo, as well as completed, executed, and current IRS Tax Form W-9s for **[Releasors and]** Releasors' counsel. . . .[7]

Thus, the parties essentially ask the Court to determine whether the bracketed language should be removed or remain in the Settlement Agreement.

Relatedly, section 9 of the Settlement Agreement states as follows:

9. **No Tax Representations.** Releasors acknowledge that Wells Fargo makes no representations regarding the tax consequences of this Agreement and any tax liability which may result from the Settlement Payment and/or consideration provided to Releasors shall be the sole responsibility of Releasors. Releasors acknowledge that we have had an opportunity to consult with counsel of Releasors choosing concerning the tax consequences of this Agreement.[8]

From March 2019 to June 2020, this settled matter was the subject of a sequence of pretrial conferences, principally because the parties disputed how to report and to account for the tax consequences of the Settlement Payment. Debtor wanted to avoid reporting the Settlement Payment as taxable to the Debtor, because that Payment would go entirely to her Counsel and she would receive no "economic gain" from that payment.[9] The Bank advised that, under the Internal

---

[5] *Id.* at ¶ 2. The Release does not extend to the Bank's successor with respect to the subject loan, Specialized Loan Servicing LLC.
[6] *Id.* at ¶ 1 (see bracketed language).
[7] Buttner Certif., Agreement ¶ 1, Ex. A, Dkt. No. 38 (emphasis supplied).
[8] Buttner Certif., Agreement ¶ 9, Ex. A, Dkt. No. 38.
[9] Bank Br., at 1, Dkt. No. 38.

4

Revenue Code, it could not avoid requiring a W-9 Form from the Debtor, her spouse and her Counsel and issuing the required Form 1099 information returns. The parties were unable to resolve this issue and agreed to let it be decided by this Court. The parties filed and served timely submissions, and the Court now issues this Opinion and orders that Debtor, her spouse and her Counsel submit completed and executed W-9 Forms to Wells Fargo so that it can issue appropriate Form 1099 information returns reporting the Settlement Payment to the IRS.[10]

### IV.    SUMMARY OF ARGUMENTS

Debtor's Counsel states that Debtor focused on a settlement with these goals:

(i) preserving Debtor's ability to seek a loan modification from or to file an action against Specialized Loan Servicing, LLC ("SLS"), which had taken over the Debtor's loan;[11]

(ii) paying Debtor's Counsel fees;

(iii) preventing the Bank from charging any more fees on the mortgage loan; and

(iv) foregoing statutory damages that were theoretically available (but not actually awarded) because statutory damages would be chargeable to the Debtor as income.[12]

Debtor's Counsel explains that Debtor, the Bank and he agreed that the Bank would pay the $20,000 Settlement Payment to Counsel in full satisfaction of his fees (which Counsel says are much higher).[13] Counsel states that he intends to file a fee application to support his request.[14] Debtor's Counsel argues that "[t]he Debtor will not accrue any economic gain" from Counsel's receiving the Settlement Payment and that therefore it is not taxable income to her.[15] In response, the Bank argues that it has no obligation to determine whether the Settlement Payment is taxable

---

[10] Bank Br., June 4, 2020, Dkt. No. 38; Debtor Br., June 12, 2020, Dkt. No. 40; Bank Reply, June 17, 2020, Dkt. No. 41.
[11] Debtor filed an Adversary Complaint against SLS on June 24, 2020 (Adv. Pro. No. 20-1376 (VFP)). Parties advised the Court on or about September 24, 2020 that this adversary proceeding has settled.
[12] Debtor Br., at 2, Dkt. No. 40. The Court does not accept these uncertified statements as true or material as a factual or legal matter, but refers to them for context.
[13] Debtor Br., at 2, Dkt. No. 40.
[14] Debtor Br., at 2, Dkt. No. 40.
[15] Debtor Br., at 3, Dkt. No. 40.

to the Debtor, her spouse or Debtor's Counsel and no discretion to avoid reporting payment of Settlement Payment as potential income to the Debtor (or her spouse) under controlling law, citing applicable provisions of the Internal Revenue Code and Regulations, as well as related case law.

### V. LEGAL STANDARDS AND ANALYSIS

#### A. The General Standards and the Broad Definition of Income

The Internal Revenue Code (the "IRC") at 26 U.S.C. § 61(a) defines gross income as "all income from whatever source derived." The United States Supreme Court in *Commissioner of Internal Revenue* ("*C.I.R.*") *v. Banks*, 543 U.S. 426, 433 (2005) confirmed that this "definition extends broadly to all economic gains not otherwise exempted." In *Johnson v. LPL Fin. Servs.*, 517 F. Supp. 2d 1231, 1234 n.8 (S.D. Cal. 2007), the Court assumed a judgment or settlement (unless it is for injury or illness under 26 U.S.C. § 104(a)) to be gross income to the payee unless she could point to a specific Tax Code section or regulation that proved otherwise. No such specific provision has been cited by the Debtor here. Thus, the Settlement Payment *may* constitute income to the Debtor (and her spouse), which may in turn then be subject to appropriate deductions or other limitations on tax liability.

#### B. The Specific Reporting Requirements

From the Bank's perspective, whenever the Bank makes a distribution of $600 or more in the course of its business, 26 U.S.C. § 6041 ("Information at source") requires it to report that distribution to the IRS:

> **(a) Payments of $600 or more.**--All persons engaged in a trade or business and making payment in the course of such trade or business to another person, of rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable gains, profits, and income [with exceptions not relevant here] of $600 or more in any taxable year, or, in the case of such payments made by the United States, the officers or employees of the United States having information as to such payments and required to make returns in regard thereto by the regulations hereinafter provided for, shall render a true and

>   accurate return to the Secretary, under such regulations and in such form and manner and to such extent as may be prescribed by the Secretary, setting forth the amount of such gains, profits, and income, and the name and address of the recipient of such payment.

26 U.S.C. § 6041(a). The Bank also cites 26 C.F.R. § 1.6041-1(a)(1)(i)(B) ("Return of information as to payments of $600 or more") (also known as "Treas. Reg. § 1.6041-1"), which requires the Bank to file an information return for payments of:

>   (B) Interest (including original issue discount), rents, royalties, annuities, pensions, and other gains, profits, and income aggregating $600 or more.

26 C.F.R. § 1.6041-1(a)(1)(i)(B). These "information returns . . . help the government locate and check upon recipients of income and the amounts they receive." *Gierbolini Rosa v. Banco Popular de Puerto Rico*, 930 F. Supp. 712, 716 (D.P.R. 1996), *aff'd*, 121 F.3d 695 (1st Cir. 1997). The District Court in *Gierbolini Rosa* continued:

>   The information return creates no tax obligations on the part of the taxpayer beyond what the taxpayer's particular tax status in a given year requires him to pay. *The persons or entities making payments have no discretion, and should not evaluate the taxpayer's tax obligation.* Their only duty is to report, leaving it to the government and the taxpayer to sort out their differences as to the taxable status of any income in any particular tax year. (Emphasis supplied).

*Gierbolini Rosa*, 930 F. Supp. at 716 (finding that Banco Popular's erroneous reporting of income on an information return for the wrong year was neither defamatory nor an abuse of privilege. *Id.* at 717-18). Significantly, the Bank is subject to penalties if it does not properly file an information return. 26 U.S.C. § 6721(a)(1) ("Failure to file correct information returns").

In further support of its arguments, Wells Fargo cites to *C.I.R. v. Banks*, 543 U.S. 426, 429-30 (2005), where the Supreme Court, presiding over two consolidated cases, was asked to decide whether that portion of a contingent fee settlement or judgment paid to a plaintiff's attorney was reportable as income to the plaintiff under the Internal Revenue Code. The Court determined

7

"as a general rule, when a litigant's recovery constitutes income, the litigant's income includes the portion of the recovery paid to the attorney as a contingent fee." *Banks*, 543 U.S. at 430. In so ruling, the Court reaffirmed the "anticipatory assignment doctrine," which prevents a taxpayer from avoiding the tax consequences of income (even unliquidated income) by assigning a portion of it to a third party in advance of receiving it, without regard to the taxpayer's motive for doing so. *Banks*, 543 U.S. at 433-34. The taxpayer is deemed to retain "dominion" over the "income-generating asset," even if he or she assigns the income in advance of receiving it. *Banks*, 543 U.S. at 434-35. The Court reaffirmed "the principle that income should be taxed to the party who earns the income and enjoys the consequent benefits." *Banks*, 543 U.S. at 435.

Another significant part of the *Banks* ruling as relates to this case is that the Supreme Court rejected arguments that the attorney's skill, rather than the client's injury, was the income-generating event. *Banks*, 543 U.S. at 435-36. The attorney remains an agent of the client-principal, and "the client retains ultimate dominion and control over the underlying claim." *Banks*, 543 U.S. at 436.[16] Similarly, in this case, Debtor's Counsel has no independent cause of action against Wells Fargo, the party providing the Settlement Payment. The claim and cause of action here unquestionably belong to Plaintiff, who has the exclusive right to settle the claim; i.e.,

---

[16] At page 2 of its initial Brief, the Bank relied on 26 C.F.R. § 1.6041-1(a)(iii) and its attendant illustrations about reporting judgment or settlement payments as fully taxable to the plaintiff, even if the payor pays a portion of the settlement as a fee directly to the attorney; however, 26 C.F.R § 1.6041-1(a)(iii) is cross-referenced to 26 U.S.C. § 6045(f), which is a part of 26 U.S.C. § 6045 that is entitled "Returns of brokers"; nevertheless, subsection (f) in 26 U.S.C. § 6045(f) requires the issuance of returns "in the case of *payments to attorneys*," without the broker limitation. 26 U.S.C. § 6045(f) (emphasis supplied). Relying on these authorities, the Court in *Community Bank of Bergen Cty. v. Borough of Maywood*, 2018 WL 4288659, at *3 (N.J Tax Ct. Sept. 7, 2018), held that 26 U.S.C. § 6045 and 26 C.F.R. 1.6045-5 govern the issuance of a federal Form 1099 information return to an attorney and require a payor who pays an attorney $600 or more for legal services to issue that attorney an information return whether or not (i) the attorney performed service for the payor; or (ii) kept any portion of the payment as compensation for services. Examples 1 and 3 under **26 C.F.R. § 1.6045-5(f) ("Examples")** are consistent with the Bank's position in the instant case as they describe similar situations in which proceeds may be taxable as income to the plaintiff-claimant. Although each involves direct payment to the claimant (either in a separate check or in a joint check payable to counsel and to claimant), in both examples, the payor is required to issue **two information returns**: (i) one to the claimant for the **whole amount of the settlement** (even though some portion will be paid to the attorney for compensation); **and** (ii) one to counsel for that portion of the award that is his compensation. 26 C.F.R. § 1.6045-5(f) ("Examples").

8

dominion and control. Thus, it is Plaintiff who is at least arguably receiving the "consequent benefit" of the payment of her attorney's fees through the Settlement.

The Bank argues that if they fail to provide the required W-9 Forms, the Debtor (and her spouse) would prevent the Bank from issuing the required Form 1099 information returns. The Debtor would thereby effectively place the Bank in the position, prohibited by the Court in *Gierbolini Rosa v. Banco Popular de Puerto Rico*, 930 F. Supp. 712, 716 (D.P.R. 1996), *aff'd*, 121 F.3d 695 (1st Cir. 1997), of evaluating the Debtor's tax liability for the $20,000 Settlement Payment. The problem with this position is also highlighted by the Supreme Court's decision in *Banks*, which held in similar circumstances that a payment analogous to the Settlement Payment constitutes income to the Debtor.

This Court finds the reasoning and holdings of cases such as *Banks* and *Gierbolini Rosa*, and the related authorities cited by Wells Fargo to be applicable and controlling here. In response, the Debtor has provided no case law, statute or regulation contradicting the rulings in *Banks* and *Gierbolini Rosa* or the other authorities cited above which provide that the Bank has a statutory duty to report the Settlement Payment to the IRS on an information return as gross income to the Debtor (or her bankruptcy estate) and her spouse, if appropriate.[17] In its Reply, the Bank acknowledges that the Debtor's opposition "contains arguments that may be persuasive to the IRS as to why the settlement payment may not be taxable income to her."[18] But that possibility does not change the result here because this Court is making no determination as to whether the Settlement Payment constitutes income to the Debtor (or anyone else), nor will it effectively

---

[17] Bank Reply, at 2, Dkt. No. 41 (as to possibility that the proceeds should be reported as income to the bankruptcy estate rather than to Debtor). See also n.23.
[18] Bank Reply, at 1, Dkt. No. 41.

require Wells Fargo to do so. That issue is not before the Court and is not in this Court's (or Wells Fargo's) authority to decide. That issue is between the IRS and the Debtor.

Debtor's arguments in opposition rely first on inapposite *dictum* in *Banks* arising from one of the consolidated cases in which the successful plaintiff filed his claim under a federal statute (employment discrimination) that awarded fees to prevailing attorneys. *Banks*, 543 U.S. at 438. Plaintiff in that case argued that the anticipatory assignment doctrine would conflict with that statute. *Banks*, 543 U.S. at 438. Because the *Banks* plaintiff settled his case, the Supreme Court determined that plaintiff's counsel received its fees under the parties' "private contingent-fee contract," not under the fee-shifting statute (as there was no court-ordered judgment). *Banks*, 543 U.S. at 439. The same is true here, as Debtor's Counsel is ultimately being paid for the services he provided to the Debtor pursuant to their retention agreement, rather than as the result of any fee-shifting statute, with that payment (as may have been reduced) being funded by the Settlement of Debtor's claims.

Nonetheless, the Debtor focuses upon the following sentence in *dictum* at the end of *Banks* as grounds for determining the Settlement Payment is not taxable as income to this Debtor: "There was no court-ordered fee award, nor was there any indication in Banks' contract with his attorney, or in the settlement agreement with the defendant, that the contingent fee paid to Banks' attorney was in lieu of statutory fees Banks might otherwise have been entitled to recover." *Banks*, 543 U.S. at 439. But this *dictum*, even if it were applicable, is not helpful to Plaintiff because, as noted, there is no fee shifting or statutory fee award in this case. There was simply a settlement of Plaintiff's disputed claims. The fact that Plaintiff's Counsel is applying for approval of his fees does not make the Bankruptcy Code a fee-shifting statute or the type of "court-ordered fee award"

referred to in *Banks*. In fact, the fee "award" under the Bankruptcy Code is for the fees incurred on Debtor's behalf that the Debtor is required to pay. *See* 11 U.S.C. §§ 327(a) and 330(a)(4)(B).

Debtor also references a private letter ruling (the "Ruling") that the IRS issued to an unidentified Taxpayer-litigant on August 25, 2015. The Ruling itself declares at page 3 that it is issued only for the benefit of that Taxpayer and that "Section [26 U.S.C. §] 6110(k)(3) of the Code provides that it may not be used or cited as precedent."[19] Even if it could be, this Ruling is similarly not helpful to Plaintiff's arguments. There, the Taxpayer was a Legal Aid client, who was represented by two Legal Aid Organizations as co-counsel; each Organization stated in its retainer that it would not charge her for legal services.[20] Taxpayer filed her claim under a fee-shifting statute that awarded fees to prevailing counsel (Taxpayer settled).[21] In the Ruling, the IRS distinguished *Banks* and declared that the counsel fees were not includible in Taxpayer's gross income under 26 U.S.C. § 61(a), because Taxpayer, an indigent client, had no obligation to pay counsel fees in the first instance.[22] In contrast, in this case, the Debtor indisputably had (and has) an obligation to pay Counsel fees, even if a portion was forgiven. And those reduced fees are now being funded by Debtor's agreement to effectively assign the Settlement Payment to Counsel. Further, the Settlement Payment is not based on any fee-shifting statute; it is simply a settlement of Plaintiff's claims, without any fee-shifting statute involved.

---

[19] Debtor Br., Ruling, Ex. A, Dkt. No. 40.
[20] Debtor Br., Ruling, at 2, Ex. A, Dkt. No. 40.
[21] Debtor Br., Ruling, at 1, 2, Ex. A, Dkt. No. 40.
[22] Debtor Br., Ruling, at 3, Ex. A, Dkt. No. 40. The Ruling stated:

> Attorneys' fees awarded to a successful litigant are generally includible in a litigant's gross income under either the anticipatory assignment of income doctrine of *Banks* and [*Lucas v. Earl*, 281 U.S. 111 (1930)] or the payment of a liability doctrine enunciated in [*Old Colony Trust Co. v. Commissioner*, 279 U.S. 716 (1929)]. However, your situation is different because you had no obligation to pay attorneys' fees.

Finally, Debtor argues that she derives no economic benefit or "gain" from the $20,000 Settlement Payment which she has agreed to pay to her Counsel and which Counsel has agreed to accept in full satisfaction of the money that Debtor owes him. The Court disagrees. Debtor received the benefit of Counsel's services, for which she or her estate would otherwise have been liable. As the result of the Settlement, the payment of her Counsel's fees is being funded by the Settlement, which is at least arguably an economic gain or benefit to Debtor. However, as noted above, whether the Settlement Payment constitutes income to Plaintiff is not for Wells Fargo or this Court to decide. That issue is between the IRS and the Debtor, who retains all her rights to argue that the Settlement Payment is not income and/or that it is subject, in whole or in part, to any applicable deductions or other reductions in tax liability.

In sum, the Debtor has provided no legal grounds under which this Court may relieve the Bank of its statutory duty to obtain the W-9 Forms needed to generate any required Form 1099 information returns for Debtor, her spouse and her Counsel for the $20,000 Settlement Payment. Determination of the taxability of those proceeds to the Debtor and her spouse must await further proceedings between the Debtor and IRS.[23]

## VI.    CONCLUSION

For the foregoing reasons, the Court orders the Debtor, her spouse and her Counsel to submit Forms W-9 to the Bank so that it may prepare and issue appropriate Form 1099 information returns. This ruling is without prejudice to Debtor's (and her husband's) rights to assert that the

---

[23] This Court is similarly not making any determination as to whether the Settlement Payment constitutes income attributable to the Debtor's spouse, which presumably is based on whether Debtor and her spouse file joint returns. No information was provided by either party on this point. The Court refers to Debtor's spouse throughout this Opinion because he is included in the definition of "Releasors" in the Settlement Agreement and therefore one of the parties required to provide a Form W-9 pursuant to section 1(a) of the Settlement Agreement.

12

Settlement Payment is not income to her or her spouse and/or that they are entitled to deductions, offsets, or any other rights they may have with respect to the taxability of the Settlement Payment.

Counsel for Wells Fargo is directed to prepare a proposed form of Order and submit it to the Court with a copy to Debtor's counsel under the seven-day rule set forth in Local Bankruptcy Rule 9013-4. The Court encourages Wells Fargo to first submit the proposed Order to Debtor's Counsel for a brief period of review to determine if agreement on the form of Order can be reached. If agreement cannot be reached quickly, the proposed Order should be submitted under the seven-day rule as indicated.

Dated: September 30, 2020

*Vincent F. Papalia*

VINCENT F. PAPALIA
Judge, United States Bankruptcy Court